TERRELL, Justice
(concurring specially).
I agree to the conclusion in the majority opinion prepared by Mr. Justice SEBRING. Except for the fact that I am so strongly committed to our Jeffersonian Democratic policy I would refrain from saying more. I am not unaware of the broad power bestowed on law enforcement officers to apprehend those charged with anti-socia vices, but in doing so I know of no law that warrants an arresting officer in assaulting the party arrested and then affronting him with the age-old back alley epithet — son of a bitch — as a prelude to the arrest.
In Brown v. State, Fla., 62 So.2d 348, 349, this Court approved the doctrine that prohibition against unreasonable searches and' seizures is rooted deep in our legal and political heritage. In original concept it comprehended one’s house or dwelling, but the constitutional inhibition extended it to “ ‘persons, houses, papers, and effects’.”' It was designed to make them impregnable even to the King’s officers without a warrant. It has been said that one’s home may be so humble that the rain leaks through the-roof, the dog may slip through the cracks- or it may be as crude as the laborer’s shanty in the turpentine quarters, but even so, it is his castle and the King’s courier dare not enter the door except he be armed with a search warrant authorizing him to do so.
It is contended that the enforcement officers in this case were on an inspection tour as representatives of the Hotel Commission and were not required to have a search warrant... This is quite true if an inspection tour was their objective, but it is difficult to tell from the record whether they were on an inspection,tour or a,raid to catch gamblers and illicit liquor dealers. The difference is important because the latter requires a search warrant if one’s premises are to be searched. A hotel inspection only requires one inspector while it appears that there were six in the party that made the search in question, two of whom were not deputy hotel commissioners but were deputy sheriffs of Dade County.
*357 . At any rate, whether it was an inspectiqn or a raid it was accomplished in the gestapo fashion instead of in the orderly democratic method required by the constitution. People bred and born to freedom are, quick to repel the invasion of their liberty by the curious or the evil-minded, even though they come bearing some badge of authority. It has been said that the greatest danger to liberty lurks in the insidious encroachment on it by men of zeal, well-meari-’ ing but devoid of understanding. As Mr. Justice Brandéis once pointed out, “experience should teach us to be most on our guard to protect liberty when the government’s purposes are beneficient.” ' There is no surer way to whittle away our constitutional heritage of freedom than to administer it by totalitarian methods. Assaults on our liberties from the inside by those expected to protect them are often more dangerous than those of avowed, enemies from without.
Liberty must be merited in order to preserve it. There is no better authenticated fact of history than that republics fold up and disappear as'the people cease to be vigilant. Soon after the constitution was signed a lady is said to have asked Benjamin Franklin: “What have you given us?” “A republic,” said Mr. Franklin, “if you can keep it.” ' Democracies do not vanish over night. They do so by a gradual whittling away of the people’s liberties. Transition of the Roman Republic to the Roman Empire was accomplished through inch by inch subtraction of the people’s liberties. One could as successfully administer a Sunday School by illicit gambling precepts as he could a Christian democracy by totalitarian precepts.
The makers of the constitution despised and condemned tyrannical exhibition of power and pointed out the way it should be accomplished in a free country like ours. The trial court found that such ábuse of power as indicated here did not vitiate the inspection nor the suspension order. This view appears to be supported on good authority to which I feel impelled to agree-; at the same time, for the reasons detailed, I cannot refrain from condemning the means employed to accomplish the, result.
ROBERTS, C. J., • and HOBSON, J.5 concilr. ‘ ’ • ■ ' ¡ ,